UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION


CHARLES HACKER,                    )
                                   )
              Plaintiff,           )
                                   )
       v.                          )   CASE NO. 4:08-cv-0148-DFH-WGH
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of the Social Security )
Administration,                    )
                                   )
              Defendant.           )


ENTRY ON JUDICIAL REVIEW


Plaintiff Charles Hacker seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application for disability insurance benefits and supplemental security income.  Acting on behalf of the Commissioner, Administrative Law Judge ("ALJ") de la Torre determined that Mr. Hacker was not disabled under the Social Security Act) because he could perform his past relevant work at a light exertion level and in the same capacity as a production or factory superintendent as defined by the Dictionary of Occupational Titles.  R. 18.  Based on this determination, the ALJ denied benefits. Mr. Hacker argues that the ALJ's determination is logically inconsistent with the facts presented in the case.  Because the ALJ did not provide a "logical bridge"

between the facts and the determination, the Commissioner's decision must be remanded for further consideration.

*Factual Background*

Mr. Hacker was born in 1950.  At the time of the administrative hearing, he was 56 years old.  R. 239.  Mr. Hacker completed high school and did not pursue any additional studies.  From 1989 until 2003, he owned and operated Hacker Fabrication, a metal fabrication company.  R. 241, 246.  Mr. Hacker alleges that he became disabled around April 2005 due to pain from arthritis in his neck and extremities and from bulging discs in his back.  R. 247-48.  On August 17, 2005, Mr. Hacker filed his first application for disability insurance benefits and supplemental security income.  Both claims were denied on September 20, 2005 and upon reconsideration on June 23, 2006.  On May 11, 2007, Mr. Hacker's hearing was held before an ALJ.  The ALJ denied both claims, and the Appeals Council denied further review of the ALJ's decision.  R. 11.

I.     *Medical Record*

Mr. Hacker started experiencing back pain and numbness in his right arm around January 2001.  R. 248-49.  He sought treatment from Dr. Jeff Ollo.  An EMG revealed an "acute denervation in muscle supplied by [the] C6 and C7" cervical vertebrae.  A MRI revealed no evidence of a bulging or herniating disc between the C3-4 vertebrae, but it revealed a disc protrusion between the C4-5

and C5-6 vertebrae and a disc extrusion between the C6-7 and the C7-T1 vertebrae.  R. 200.  Dr. Ollo concluded that Mr. Hacker suffered from herniated cervical discs between the C6-7 and C7-T1 vertebrae, a left upper extremity radiculopathy, and a left shoulder impingement.  R. 196.  Mr. Hacker was ordered to treat the ailment with heat and ice.  R. 195.

On January 14, 2005, Mr. Hacker met with his primary care physician, Dr. John Schuck, for an annual examination.  Mr. Hacker complained of neck pain and numbness in his arms.  Dr. Schuck reported that Mr. Hacker had "soft tissue tenderness in the paraspinal muscle area" and was "paresthesic in both arms." A MRI revealed a mild disk bulge between the C3-4 vertebrae, a left paracentral disk protrusion between the C4-5 vertebrae, a left paracentral disk protrusion and a mild marginal osteophyte formation between the C5-6 vertebrae, a diffuse central disk bulge between the C6-7 vertebrae, and a disc protrusion between the C7-T1 vertebrae.  Dr. Schuck concluded that Mr. Hacker suffered from "multilevel degenerative disk and facet disease."  R. 154.

On June 14, 2005, Mr. Hacker was evaluated by Dr. J. Paul Kern concerning his continued neck and upper extremity pain.  Dr. Kern performed a nerve conduction study and a needle electromyography.  He concluded that there was no evidence of any "plexopathy, radiculopathy, mononeuropathy, polyneuropathy, peripheral neuropathy, or entrapment neuropathy," so that Mr. Hacker's electrodiagnostic evaluation was normal.  R. 137-38.

On August 19, 2005, Mr. Hacker was examined by Dr. Daria Schooler and Stephen Douglas, a nurse practitioner.   An X-ray revealed "progressive spondylosis at multiple levels" and "facet osteoarthritis . . . at the lumbosacral junction."   R. 144-45.   Dr. Schooler diagnosed Mr. Hacker with cervical spondylosis without myelopathy, lower back pain, and lumbar spondylosis without myelopathy.   Dr. Schooler recommended physical therapy, a pain clinic evaluation, and potential surgery.   Mr. Hacker was not interested in pursuing those options, and Dr. Schooler instructed Mr. Hacker to perform in-home therapy.   R. 134.

On January 10, 2006, the state Disability Determination Bureau required Mr. Hacker to be evaluated by Dr. Mahmoud Yassin Kassab.   Dr. Kassab found that Mr. Hacker had five ruptured discs, chronic neck pain, chronic lower back pain, and intermittent arm numbness.   Mr. Hacker's range of motion in his neck was somewhat limited with lateral flexion at forty degrees, but Dr. Kassab found no limitation in the range of motion of Mr. Hacker's lumbar spine.   Dr. Kassab found that Mr. Hacker could sit, stand, grasp, lift, carry, walk one block, and climb one flight of stairs.   He concluded that Mr. Hacker could "stand and walk at least two hours in an eight-hour day."   R. 156-58.

On May 26, 2006, Mr. Hacker presented with pain in his wrist and thumb at St. Vincent Jennings Hospital.   Testing revealed that Mr. Hacker suffered from

osteoarthritic problems in his wrist and thumb, with the MP joint being the most significantly affected.  R. 229-30.

The Social Security Administration reviewed Mr. Hacker's medical history and prepared an assessment of his residual functional capacity.  R. 183-90.  That review concluded that Mr. Hacker should be limited to lifting no more than 20 pounds only occasionally and 10 pounds frequently, and that he could stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, should never be required to balance, and should only occasionally crawl on the job.  R. 184-85.

II.     *Testimony at the Hearing*

The ALJ held a hearing on May 11, 2007, regarding Mr. Hacker's disability application.  Mr. Hacker testified that he injured his back, neck, knees, and feet through years of working as a metal fabricator.  R. 247-48.  He was constantly in varying states of pain that caused him to lie down periodically and/or take pain medication for relief.  R. 263-64.  He had difficulty doing everyday activities but was able to drive, walk, cook, and perform necessary personal hygiene tasks on his own.   R. 269-72.   Mr. Hacker testified that he possessed a high school diploma, outsourced all administrative duties to employees or other businesses, had poor eyesight, could not use a computer, and could marginally read some technical documents.  R. 239, 243-44, 257, 272-73.  Finally, Mr. Hacker testified

that he was prescribed Hydrocodone APAP 5/500 and Piroxicam to relieve his symptoms.  R. 257-59.

The ALJ also heard testimony from Michael Blankenship, a vocational expert, regarding Mr. Hacker's ability to work.  R. 280.  Blankenship noted that there would be some deviation between the Department of Labor's code in the Dictionary of Occupational Titles ("DOT") and Mr. Hacker's past relevant work.  R. 281-83.  The ALJ asked Blankenship a series of hypothetical questions to determine Mr. Hacker's ability to work.  The ALJ's first hypothetical question was whether a person with Mr. Hacker's qualifications who was capable of moving 20 pounds or less and who could sit for four hours at a time or stand/walk for six hours at a time could perform Mr. Hacker's past relevant work.  Blankenship testified that the hypothetical person could perform the work as it was described in the DOT.  But he testified that if the work was the same as Mr. Hacker's past relevant work, the hypothetical person could not perform the work.  Regarding the latter, Blankenship testified that the hypothetical claimant could perform only sedentary occupations.  R. 285-89.

The ALJ asked Blankenship whether there were any other light or sedentary occupations to which the claimant's skills would transfer besides occupations at lower skill levels.  Blankenship testified that none of Mr. Hacker's skills seemed to be readily transferable.  Based on Mr. Hacker's testimony regarding his management style, his outsourcing of administrative work, and the nature of his

past work, Blankenship was hesitant to find that Mr. Hacker could transfer readily to a typical managerial position.  R. 288-89.

Finally, the ALJ asked Mr. Blankenship whether, assuming Mr. Hacker's testimony was credible, the aforementioned hypothetical claimant could perform the past relevant work or the identified transferable occupations.   Mr. Blankenship responded that the hypothetical claimant would not be able to perform either identified occupation.  R. 288-89.

*Framework for Determining Disability*

To be eligible for disability insurance benefits and supplemental security income, Mr. Hacker must establish that he suffered from a disability within the meaning of the Act.  To prove disability under the Act, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Mr. Hacker was disabled if his impairments were of such severity that he was unable to perform the work that he had previously engaged in; and if based on his age, education, and work experience, he could engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to him in his immediate area, or whether he would have been hired if he

had applied for work.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  This is a stringent standard.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).

To determine whether Mr. Hacker was disabled under the Act, the ALJ followed the five-step test analysis set forth in 20 C.F.R. § 404.1520 and § 416.920 .  The steps are as follows:

(1)     Has the claimant engaged in substantial gainful activity?  If so, the claimant was not disabled.

(2)     If not, did the claimant have an impairment or combination of impairments that are severe?  If not, the claimant was not disabled.

(3)     If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)     If not, could the claimant do his past relevant work?  If so, the claimant was not disabled.

(5)     If not, could the claimant perform other work given her residual functional capacity, age, education, and experience?  If so, the claimant was not disabled.  If not, the claimant was disabled.

See generally 20 C.F.R. §§ 404.1520, 416.920.[1]  When applying this test, the burden of proof is on the claimant for the first four steps and on the

_____

[1]Mr. Hacker filed for both supplemental security income benefits and disability insurance benefits, which are covered in Sections 416 and 404, respectively, of the regulations.  The requirements for determining medical disability under both sections are listed in Subpart P of Section 404.  See 20 C.F.R. § 416.925.

Commissioner for the fifth step.  *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001).

First, the ALJ found that Mr. Hacker satisfied step one and had not engaged in a substantial gainful activity since the alleged onset of the disability.  Second, the ALJ found that Mr. Hacker suffered from degenerative disc disease and obesity.  R. 13.  Third, the ALJ found that these impairments did not meet or equal any of the listings that would automatically qualify Mr. Hacker for benefits.  R. 14.  Finally at step four, the ALJ found that Mr. Hacker had the residual functional capacity to perform light exertional work.  The ALJ found that he was capable of performing his past relevant work as a superintendent.  R. 14-18.  The ALJ denied Mr. Hacker disability benefits.

*Standard for Judicial Review*

The Act provides for judicial review of the Commissioner's denial of benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).  Because the Appeals Council denied further review of the ALJ's findings, the ALJ's findings are treated as the Commissioner's final decision.  *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, it must be upheld by a reviewing court.  42 U.S.C. § 405(g), 1383(c)(3); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart,* 357 F.3d 697, 699

(7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of the conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).  The ALJ's decision must be based upon consideration of all the relevant evidence, and the ALJ must articulate at some minimal level her analysis of the evidence so that the court can trace adequately the path of the ALJ's reasoning.  *Diaz*, 55 F.3d at 307-08.

*Discussion*

I.      *Binding Nature of Prior Agency Rulings*

The ALJ's ruling conflicts with the prior local and regional agency determinations which stated that he could not return to his past work.  Pl. Br. 2.  On January 23, 2006 and June 23, 2006, the local and regional agencies found that Mr. Hacker's "condition prevents the return to any past jobs.  However, it does not prevent doing lighter work."  R. 37, 42.  An agency determination is binding upon the claimant unless a request for a hearing by an administrative law judge is made within the appropriate time period.   20 C.F.R. §§ 404.921, 416.1421.  Since Mr. Hacker requested a hearing within the requisite time period, the prior agency determinations are not binding; therefore, the ALJ must conduct a full, independent review of the case.  The ALJ reviews a disability claim on a *de novo* basis and may consider any issues regardless of prior determinations.  20 C.F.R. §§ 404.946(b)(1), 416.1446(b)(1).  (Mr. Hacker has not raised any issue as to whether the ALJ gave sufficient notice that she intended to reconsider issues decided in his favor at earlier stages.)  The ALJ's decision must be based "on the preponderance of the evidence offered at the hearing or otherwise included in the record."  20 C.F.R. §§ 404.953(a), 416.1453(a).  The ALJ may approve or deny benefits or, when appropriate, may send the case to the Appeals Council with a recommended decision.  20 C.F.R. §§ 404.953(c), 416.1453(c).

The ALJ ultimately found that Mr. Hacker was "capable of performing his past relevant work as a superintendent.   This work does not require the performance of work-related activities precluded by his residual functional capacity."  The ALJ concluded that Mr. Hacker could perform his previous work

as it is "generally performed," not as it was previously performed by him.  R. 18. The ALJ "need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that the claimant can perform jobs substantially like that one."  *Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008).

The ALJ limited the available jobs to only those with light exertion levels, below the medium to heavy exertion levels of Mr. Hacker's past relevant work.  R. 283.  Even if the ALJ were required to rely on prior agency determinations, the ALJ's ruling would be consistent with the prior agency determinations because her ruling does not find that Mr. Hacker could return to his previous exertion level but rather could return to a similar job "doing lighter work."  The ALJ's ruling was not inconsistent with applicable law.

II.     *Inconsistencies Within the ALJ's Opinion*

    A.      *A Typographical Error?*

The ALJ wrote that Mr. Hacker should be limited to four hours of standing or walking per day, R. 18, but later wrote that he should be limited to six hours of standing or walking in an eight-hour work day.  R. 14.  Mr. Hacker argues that the four hour limitation should apply because the agency's medical consultant found that he could walk or stand for only two hours in an eight-hour period.  Mr. Hacker argues that the ALJ's determination is logically inconsistent, and in deciding between the two determinations, it is more logical to conclude that the limitation should be four hours in an eight-hour period because the phrase "at least" connotes "two hours or slightly more."  Pl. Reply. 2.

The Commissioner argues that the ALJ's statement, "I have limited him to four hours each," R. 18, is a harmless typographical error because the ALJ stated six hours in both her decisional finding and the hypothetical question posed to the vocational expert.  R. 14, 18, 285.  The Commissioner points to *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999), where the court found that the "ALJ's reference to an 'Ex. B at 5', which is not in the record, is nothing more than a typographical error" because it was clear that the ALJ meant Exhibit B-5 and clearly recited the findings from that Exhibit.

There is a substantial difference between requiring four hours and six hours per day of walking or standing.  As the vocational expert testified, light work requires the ability to stand or walk at least six hours out of an eight-hour day.  R. 291.  If Mr. Hacker was able to walk or stand for only four hours out of an eight-hour day, he would not be able to work at a light exertion level.  On this record, the court cannot overlook the discrepancy on the theory that it was an inadvertent mistake.

B.      *Weight of Medical Consultant's Opinion*

Mr. Hacker argues that the ALJ's ruling is logically inconsistent because she did not properly weigh the opinion of consulting physician Dr. Mahmoud Kassab.  R. 158.  Dr. Kassab personally examined Mr. Hacker and limited him to two hours of standing or walking in an eight-hour day, while the ALJ limited Mr. Hacker to four or six hours of standing or walking in an eight-hour day.  Pl. Br. 3.  Generally when making a determination, the ALJ may not select and discuss only the evidence that favors her ultimate conclusion, nor may an ALJ ignore an entire line of evidence that is contrary to the ruling.  *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).  The question is not whether the ALJ discussed every piece of evidence, but whether the ALJ built an accurate and logical bridge between the evidence in the record and the result reached.  *Steel v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

SSA regulations provide:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section . . . Unless the treating source's opinion is given controlling weight, the *administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant* or other program physician or psychologist. . .

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (emphasis added).  More weight is given to a physician's opinion if the physician has personally examined the patient.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

The ALJ found that Mr. Hacker's medically determinable impairments could reasonably cause the intensity, persistence, and effects of the symptoms that he described.  However, the ALJ found that Mr. Hacker's subjective complaints were not credible in light of his daily activities, which included grooming, light cleaning, reading, managing finances, eating in restaurants, and foreign travel.  R. 16.  The ALJ concluded that Mr. Hacker could perform light exertional work.  *Id.*  The ALJ noted that Dr. Kassab concluded that Mr. Hacker could "stand or walk for at least two hours in an eight-hour work day."  Based upon this reasoning, the ALJ limited Mr. Hacker to "four hours each."  R. 18.  However, the ALJ stated in the decisional findings that the claimant was limited to "standing one hour at one time and six hours during an eight-hour workday; walking one hour at one time and six hours during an eight-hour workday. . . ."  R. 14.

-15-

While an ALJ is not required to provide an in-depth analysis of every piece of evidence the claimant provides, the ALJ must articulate reasons for rejecting or accepting specific evidence of a disability so that a reviewing court can trace the path of the ALJ's reasoning. *Diaz*, 55 F.3d at 308. Here, the ALJ did not articulate any reasons for rejecting or accepting the consulting physician's opinion, nor did the ALJ explain the weight given to the consulting physician's opinion. Because the issue is critical to the outcome and because the ALJ did not sufficiently explain the reasons for accepting, rejecting, or weighing the consulting physician's opinion, this matter must be remanded for further proceedings.

III.    *Failure to Consider Relevant Facts*

Mr. Hacker argues that the ALJ failed to consider the relevant testimony regarding his ability to perform the Department of Labor's Dictionary of Occupational Titles classification of his past relevant work as a production superintendent (DOT § 183.117-114). Pl. Reply 1. To support a finding that a claimant could return to his past relevant work, an ALJ does not need to find the claimant capable of returning to the precise job he had, but only to one substantially similar to it as the job is generally performed. *Getch*, 539 F.3d at 482. However, an ALJ may not select and discuss only the evidence that favors the ultimate conclusion and may not ignore an entire line of evidence that is contrary to the ruling. *Golembiewski*, 322 F.3d at 917. The ALJ must minimally articulate reasons for rejecting or accepting specific evidence of disability and

must build an accurate and logical bridge between the evidence in the record and the result reached so that a reviewing court can trace the path of the ALJ's reasoning.  *Diaz*, 55 F.3d at 308.  Accord, *Steele v. Barnhart*, 290 F.3d at 941.

To classify a transferable job, the ALJ must follow Social Security Ruling 82-61, which provides:

> A former job performed [sic]by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.  Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job *but can perform the functional demands and job duties as generally required* by employers throughout the economy, the claimant should be found to be "not disabled".

SSR 82-61, 1975-1982 Soc. Sec. Rep. Serv. 836, 1982 WL 31387 (emphasis added).  However, "not every job that bears resemblance to the claimant's past position can be equated with it."  *Getch*, 539 F.3d at 382.  Social Security Ruling 82-62 requires a careful analysis to determine if the claimant can still perform the past relevant work.  SSR 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809, 1982 WL 31386.  The claimant's "past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work."  SSR 82-62.  "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."  *Id.*

To qualify for the production superintendent classification (DOT § 183.117-114), the Dictionary of Occupational Titles requires a reasoning level of five, a language level of four, and an SVP level of eight, and notes that a production superintendent "may compile, store, and retrieve production data using a computer. 3 Claitor's Publishing Division, Dictionary of Occupational Titles with O*Net Definitions § 183.117-114, p. 124 (5th ed. 2003). Under the Department of Labor's classification tables listed in Appendix C of the DOT, a reasoning level of five requires a worker to "apply principles of logical or scientific thinking to define problems, collect data, establish facts . . . draw valid conclusions, [i]nterpret an extensive variety of technical instructions in mathematical or diagrammactical form, [and] deal with several abstract and concrete variables." A language level of four requires the worker to "read literature, book and play reviews, scientific and technical journals, abstracts, financial reports, legal documents . . . [and] [w]rite novels, plays, editorials, journals, speeches, manuals, critiquest, poetry, and songs, [and articulate] theory. . .voice and diction, phonetics, and discussion and debate." These levels include all of the aptitude requirements of the lower levels. Finally, SVP indicates the level of specific vocational preparation needed to attain a particular job classification. A level of eight requires a preparation time of "over 4 years up to and including 10 years." *Id.* at 1009-14.

To attain these levels, a worker may develop particular skill sets. A skill is knowledge of a work activity acquired through education or on the job training.

R. 283.  The ALJ found that Mr. Hacker's past relevant work was equivalent to that of a production superintendent; however, the ALJ offered no explanation for how she arrived at that conclusion.  R. 18.  From the trial record, it appears that the ALJ relied on this classification because the vocational expert stated that "this gentleman appears to have been something of a jack-of-all-trades.  Now, technically speaking, what the Department of Labor would identify his role is what's referred to as a superintendent of a factory."  R. 281-82.  The ALJ seemed to follow this line of reasoning by questioning the vocational expert as to how many positions were available with a similar classification.  The vocational expert replied that there were 97,084 nationally and 2,885 in the state of Indiana.  R. 287.  However, the ALJ's written ruling lacks the necessary "logical bridge" because it does not provide the court with an adequate means to trace the path of the ALJ's reasoning on this critical issue.  *Diaz*, 55 F.3d at 308.

Mr. Hacker testified that he received a high school diploma and that his past relevant work history consisted of owning and operating a metal fabrication business for more than 12 years where he was the chief fabrication expert and supervised up to 12 employees.  R. 239-40, 245.  Mr. Hacker spent a majority of his time working hands-on in the fabrication process.  He testified that he neither used nor knew how to use a computer, did not make any bank deposits, contracted with other employees and companies to provide administrative services such as payroll and business reports, and possessed only a limited ability to read and interpret technical documents.  R. 243-44, 273.

Blankenship, the vocational expert, testified that Mr. Hacker's main tasks consisted of managing by wandering around, welding, fabricating, and operating a forklift.  R. 282.  Blankenship found that the Department of Labor would classify Mr. Hacker's previous managerial work as a transferable light skilled job, while Mr. Hacker's work as a forklift operator, welder, and fabricator would not be transferable skill sets because they require a medium to high exertion levels.  R. 282-83.  The DOT's production superintendent description indicates that computer use "may" be necessary.  3 Claitor's Publishing Division, Dictionary of Occupational Titles § 183.117-114 (5th ed. 2003).  Blankenship testified that computer use should now be construed as a necessary requirement due to the pervasive use of computer technology in the workplace.  R. 291.

As noted previously, "the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."  SSR 82-62.  If Mr. Hacker's testimony was taken as true, he did not meet the reasoning, language, or computer requirements for the DOT's production superintendent classification.  The ALJ should have provided some explanation for why she found his statements not credible.

If Mr. Hacker lacked the requisite skills necessary to perform the requirements of a production superintendent classification, the ALJ should have considered whether these skills could be attained through training.  When

determining the amount of training needed, an ALJ must consider the age of the claimant.  Social Security regulations provide:

> However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.  Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(c).  "For a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(f).  Mr. Hacker was fifty-six years old.  R. 239.  If Mr. Hacker's testimony about his prior work is credible, he may not have possessed the skills necessary for the DOT production superintendent classification, and under Table Number 2, Rule 202.06 and Sections 202.00(c) and 202.00(f), would be deemed disabled.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06.

The Social Security Administration warns:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability

decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82-62.  The ALJ's written determination does not build the requisite logical bridge between the facts and her conclusion because the ALJ's evaluation of the facts does not fully explain the reasoning for disregarding Mr. Hacker's testimony or selecting the production superintendent classification.  Since the ALJ's decision does not build a logical bridge between the facts and the conclusion, the case must be remanded for further consideration.

### Conclusion

For the foregoing reasons, the ALJ's decision denying benefits is not supported by substantial evidence and reflects a legal error.  Accordingly, the Commissioner's decision is remanded for further consideration.

So ordered.

Date:  June 24, 2009

_____
DAVID  F.  HAMILTON,  CHIEF  JUDGE
United States District Court
Southern District of Indiana

Copies to:

William Edward Jenner
JENNER AUXIER & PATTISON LLP
wjenner@wjennerlaw.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE

tom.kieper@usdoj.gov